## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Daniel Durbin,

                    Petitioner,       Case No. 21-cv-11261

v.                              Judith E. Levy
                                  United States District Judge

Kim Cargor,[1]

                                 Mag. Judge Kimberly G. Altman

                    Respondent.

_____/

## OPINION AND ORDER AMENDING THE CASE CAPTION, DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Daniel Durbin filed a *pro se* application for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner

challenges his convictions of two counts of third-degree criminal sexual

---

[1] When Petitioner Daniel Durbin filed his application for a writ of habeas corpus, he was confined at the St. Louis Correctional Facility in St. Louis, Michigan. (ECF No. 1, PageID.3.) But Petitioner is currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan. (ECF No. 13.) The proper respondent in this case is the warden at the facility who has custody of Petitioner. *See* 28 U.S.C. § 2243; Rules Governing § 2254 Cases, Rule 2(a), 28 U.S.C. foll. § 2254; Fed. R. Civ. P. 81(a)(4). Accordingly, the Court amends the case caption to name Warden Kim Cargor as Respondent.

conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d(1)(a) and (b); one count of fourth-degree criminal sexual conduct (CSC-IV), in violation of Mich. Comp. Laws § 750.520e(1)(a) and (b); one count of gross indecency, in violation of Mich. Comp. Laws § 750.338b; and two counts of accosting a child for immoral purposes, in violation of Mich. Comp. Laws § 750.145a. (*See* ECF No. 1, PageID.3.) For the reasons that follow, the petition for a writ of habeas corpus (ECF No. 1) is denied with prejudice. In addition, the Court denies Petitioner a certificate of appealability and leave to appeal *in forma pauperis*.

## I.    Background

Petitioner was convicted following a jury trial in Oceana County Circuit Court. (*See id.* at PageID.3–4.) That court sentenced Petitioner "as a third-offense habitual offender, MCL 769.11, to 15 to 30 years' imprisonment for the CSC-III convictions, 34 months to 4 years' imprisonment for the CSC-IV conviction, 34 months to 10 years' imprisonment for the gross indecency conviction, and 43 months to 8 years' imprisonment for the accosting convictions." *People v. Durbin*, No. 345148, 2019 WL 6048640, at *1 (Mich. Ct. App. Nov. 14, 2019); *lv. den.* 505 Mich. 1042 (2020).

2

This Court recites verbatim the relevant facts regarding Petitioner's convictions from the Michigan Court of Appeals' opinion affirming his convictions. Those facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). The Michigan Court of Appeals' opinion states:

> In the winter of 2016, HB resided with her mother and defendant in a trailer for about two to three weeks. HB was 12 years old at the time. She testified that during that timeframe defendant touched her vagina with his hands between 30 and 40 times, including acts of digital penetration.[1] HB asserted that defendant had also touched her breasts with his hands. She stated that defendant had not touched her with any of his body parts other than his hands. HB indicated that her mother was present in the room and observed the sexual assaults on about half the occasions, 15 to 20 times. HB's friend, MH, frequently visited HB at the trailer. HB testified that she observed defendant touch MH's vagina more than 20 times, including digital penetration, and HB also witnessed defendant touch MH's breasts.
>
> MH testified that when she was 13 years old and visited HB at the trailer, defendant regularly touched her breasts, vagina, and butt, including digital penetration of her vagina. MH also claimed that defendant created a hole in the bathroom wall so that he could look at the victims when they showered. MH stated that the victims would take turns covering the hole while the other person showered. She further testified that defendant repeatedly attempted to break into the bathroom to view the victims while they showered. MH asserted that on one occasion she and HB

walked into a bedroom and witnessed defendant and HB's mother having sex and that when the girls tried to leave, defendant forced the door closed and made them watch the sex act.

SM testified that when she was 12 years old, she spent a Saturday night at the trailer while HB was living there. According to SM, on that occasion defendant touched and squeezed her butt over and under her clothes. SM additionally testified that she saw defendant touch HB's breasts and butt. Finally, SM claimed that when HB's mother asked the girls to shower because of church services scheduled for the next day, the girls had to form a "protective circle" in the bathroom because defendant attempted to peer at them through the hole in the wall that he had created.

————————————

[1] HB repeatedly testified that defendant had inappropriately touched her 30 to 40 times, but at one point in her testimony she stated that it was more than 40 times. HB, however, also indicated that it was probably less than 30 to 40 times, and on cross-examination she testified that only half of those occasions, 15 to 20 times, involved improper touching. Further, there was some confusion regarding the timeframe of the sexual assaults, as HB testified that the 30 to 40 occasions of abuse encompassed not only the two to three weeks that she lived in the trailer, but also times when she simply went to visit her mother at the trailer.

*Durbin*, 2019 WL 6048640, at *1–2.

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court abused its discretion in refusing to appoint substitute counsel, [Petitioner] was denied his Sixth Amendment right to the effective assistance of counsel where there was complete breakdown between [Petitioner] and counsel.

II. [Petitioner's] Sixth Amendment right to the effective assistance of trial counsel was violated when trial counsel did not impeach the complaining witness with inconsistent statement[s].

III. [Petitioner] was denied his Fifth, Fourteenth and Sixth Amendment due process rights to a fair trial by ineffective assistance of counsel where counsel failed to conduct a reasonable pretrial investigation.

(ECF No. 1, PageID.19.)

## II.   Standard of Review

Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

5

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law set forth" by the Supreme Court or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of th[e Supreme] Court to the facts of a prisoner's case." *Id.* at 409. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. Discussion

### A. Petitioner's First Claim Regarding Substitution of Counsel

Petitioner first argues that his Sixth Amendment right to counsel was violated when the trial judge refused to appoint substitute counsel for Petitioner after Petitioner expressed his desire to fire his court-appointed counsel on the first day of trial.

The Michigan Court of Appeals rejected the claim at length:

> Defendant first argues on appeal that the trial court abused its discretion by refusing to appoint substitute counsel for him when there was good cause to do so. We disagree. On the first day of the trial, while the court was going over preliminary matters before the prospective jurors were led into the courtroom, defendant stated that he wished to fire his attorney "on the grounds of I feel that I'm not being properly represented." Defendant further claimed that he and counsel

7

had not gone over or discussed any type of defense and that counsel had simply attempted to convince defendant to accept a plea offer. Defense counsel then informed the court that he had met with defendant at the jail a "number of times," which was "well documented," and that he had played tapes of victim interviews for defendant, along with giving him transcriptions of the interviews. Counsel also told the trial court as follows:

> We have discussed this case in detail. I've discussed defenses with him and quite frankly, I'm going to say on the record today, he has none. I've told him that. I don't know what else he expects me to do. I think he's got a misunderstanding and is misguided in making his decision. It's against my advice [to decline the plea offer[2]]. I plan to zealously represent him at this trial, as I do with all of my clients, but I've tried to tell [defendant] that the evidence against him is strong and that his defense is weak.

The trial court denied defendant's request to "fire" his attorney. The court explained that the request came much too late and that if matters with counsel were so bad, defendant should have said something to the court a week earlier when defendant was in the court's presence at a final pretrial conference. The trial court also observed that defendant's request had no merit and that sometimes defendants simply do not like "what their attorneys have to say."

This Court reviews for an abuse of discretion a trial court's decision to deny substitution of counsel, and a court abuses its discretion when it renders a decision that falls outside the range of reasonable and principled outcomes. *People v.*

*McFall*, 309 Mich. App. 377, 382; 873 N.W.2d 112 (2015).[3] The *McFall* panel, discussing the principles applicable to a request for substitute counsel, observed:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Substitution of counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest. A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient. [*Id.* at 382-383 (citations and quotation marks omitted).]

The caselaw is clear that not only must a defendant establish "good cause" to be entitled to substitution of counsel, he or she must also show that substitution will not unreasonably disrupt the judicial process. *People v. Strickland*, 293 Mich. App. 393, 397; 810 N.W.2d 660 (2011); *People v. Traylor*, 245 Mich. 460, 462; 628 N.W.2d 120 (2001); *People v. Mack*, 190 Mich. App. 7, 14; 475 N.W.2d 830 (1991); *People v. Morgan*, 144 Mich. App. 399, 401; 375 N.W.2d 757 (1985).

In this case, we hold that substitution of counsel would have *unreasonably* disrupted the judicial process. The jury venire was in the courthouse, and the prosecutor's five witnesses were on hand and prepared to and ultimately did testify that day. There is nothing in the record suggesting that defendant's unhappiness with counsel was a development that arose for the first time on the day that trial was to commence. And the trial court specifically noted that defendant had an opportunity a week earlier to inform the court about any issues or problems with appointed counsel and that he failed to voice any complaints.

At the final conference held a week before the trial, where defendant was present, defense counsel stated that he had met with defendant for "almost four hours . . . at the jail" going over the case and reviewing a plea offer. According to defense counsel, defendant had decided to accept the plea, but had now changed his mind and wished to go to trial. Defendant informed the trial court that counsel's statement was accurate. Toward the end of the conference, the trial court asked defendant if he had any questions regarding comments made by the court allowing an amendment of the information. Defendant responded that there were no questions. The court also asked defendant if he had an opportunity to discuss matters with counsel, and defendant replied in the affirmative. Defendant had every opportunity at the final conference to tell the court that he wished to have counsel discharged but said nothing. There was simply no excuse for defendant to wait until the first day of trial to raise the issue. See *Strickland*, 293 Mich. App. at 399 ("Strickland waited until the day of trial to request new counsel. The jury and witnesses were present, and the prosecutor and defense counsel were ready to proceed. A substitution of counsel at

that point would have unreasonably delayed the judicial process.").

In light of our holding, there is no need to reach the issue of "good cause." Nonetheless, we conclude that good cause existed. It is very clear from reviewing the final conference, trial, and post-trial transcripts that defense counsel was adamant that he wanted defendant to accept the prosecution's plea offer and that going to trial would be a dangerous avenue for defendant. But there is nothing in the record suggesting that defense counsel was doing so for any reason other than counsel's belief that a plea agreement would be in defendant's best interests. Moreover, when defendant decided to go to trial, counsel indicated that he was prepared to zealously provide a defense. The record does not support a conclusion that there was a difference of opinion as to a fundamental trial tactic, a destruction of communication, a lack of diligence or interest by counsel, or a breakdown in the attorney-client relationship. Defendant was just generally unhappy with how counsel was defending him. We understand that the trial court's ruling on "good cause" was cursory, but there was no abuse of discretion and the court's main focus was on defendant's request delaying the judicial process.

———————————

[2] Before defendant asked the trial court to fire his attorney, the parties and the court discussed on the record a plea offer made by the prosecutor. Defendant rejected the offer against the advice of his attorney. Defense counsel stated, "I want to make sure that [defendant] knows exactly what he's getting himself into, and I'd ask the [c]ourt to inquire whether at this point in time he rejects the plea and wishes to proceed with jury trial." On the court's inquiry, defendant affirmed that this was his position.

[3] We note that defendant did not actually ask the trial court for substitute counsel; he merely requested that the court fire his attorney. But defendant did not indicate any desire to represent himself, so we surmise that defendant's intention was to obtain new counsel if present counsel was released.

*Durbin*, 2019 WL 6048640, at *2–3 (emphasis and alterations in original).

Petitioner does not show that the Michigan Court of Appeals made a decision that was contrary to, or unreasonably applied, clearly established federal law. "The Sixth Amendment right to assistance of counsel is a fundamental right . . . essential to a fair trial." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993). "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25 (1989)). But "[t]he right to the assistance of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney." *Serra*, 4 F.3d at 1351 (citing *Caplin & Drysdale, Chartered*, 491 U.S. at 624). "A criminal defendant who desires and is financially

able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).

"While a criminal defendant who can afford his own attorney has a right to his chosen attorney, that right is a qualified right." *Id.* (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice is "not absolute." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984) (internal citation omitted); *see also Gonzalez-Lopez*, 548 U.S. at 151–52 ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them. . . . We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." (internal citations omitted)).

13

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012) (internal citations omitted). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.* at 663–64. All of the federal circuit courts agree that a court "cannot properly resolve substitution motions without probing why a defendant wants a new lawyer," *id.* at 664; however, the Supreme Court in *Martel* did not require, as a matter of federal constitutional law, that a trial court must engage in an inquiry with a criminal defendant concerning the nature of his or her complaints against counsel before denying a motion for substitution. The Supreme Court held in *Martel* that a federal district court did not abuse its discretion in denying a habeas petitioner's motion for substitution of counsel without first conducting an inquiry into the nature of his complaints, given the timing of the motion and that the

14

motion was received by the district court "on the eve of deciding his 10-year-old habeas petition." *Id.* at 664–66; *see id.* at 665 ("[H]ere, the timing of th[e] motion"—when the district court was "putting the finishing touches on its denial of his habeas petition"—"precludes a holding that the District Court abused its discretion.").

Regarding the first factor listed above, Petitioner's request for substitute counsel on the first day of trial was untimely. *Durbin*, 2019 WL 6048640, at *2; *see Shananaquet v. Stewart*, No. 2:16-CV-13357, 2019 WL 11497819, at *15 (E.D. Mich. July 22, 2019) ("Petitioner's request for substitute counsel was untimely because it was not made known to the judge until the first day of trial."); *Kelly v. Romanowski*, No. 12-cv-11005, 2015 WL 1396476, at *8 (E.D. Mich. Mar. 25, 2015) (finding that the petitioner's request for the substitution of appointed counsel "on the first day of trial was untimely" (citing *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004); *United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006))). Petitioner attended a final pretrial conference a week earlier, and he raised no complaints about the quality of counsel's representation at the conference. *Durbin*, 2019 WL 6048640, at *3. The Sixth Circuit has stated that when "the granting of the defendant's

15

request [for a continuance to obtain new counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir. 1995)). Granting Petitioner's request to substitute counsel on the first day of trial "would [have] almost certainly necessitate[d] a last-minute continuance," *id.*, and Petitioner had an opportunity prior to trial to bring his dissatisfaction with counsel to the attention of the trial court, *see Whitfield*, 259 F. App'x at 833 ("[I]n view of the untimeliness of the defendant's request [three days before trial to continue the trial to allow him to obtain substitute counsel] and the district court's broad discretion in this area, we conclude that no Sixth Amendment violation occurred."); *Trujillo*, 376 F.3d at 606–07 (concluding that "the district court did not abuse its discretion in denying [the defendant's] motion to continue in part because "the motion for substitution of counsel and the motion for a continuance were untimely, coming only three days prior to the scheduled start of the trial" (citing *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996); *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999))); *United States v. Vasquez*,

16

560 F.3d 461, 467–68 (6th Cir. 2009) ("find[ing] no abuse of discretion by the district court in denying [the defendant's] motion for substitution of counsel" in part because the defendant's "requests for substitution of counsel, initially made a week prior to the original trial date and again made two weeks before the rescheduled trial date, were untimely"); *Jennings*, 83 F.3d at 148 ("agree[ing] with the District Court that the factor of timeliness does not count favorably for defendants" because "[t]hey moved for substitution of counsel on the day before trial for the first time").

Regarding the second factor, Petitioner does not show that the trial court's inquiry into his complaint was inadequate such that habeas relief is justified. Even if this factor were to weigh in Petitioner's favor, the other two factors do not. So he does not show that substitution of counsel was warranted and that the Michigan court's ruling was unreasonable. *See Harlan v. Lafler*, No. 2:09-CV-14524, 2011 WL 6131091, at *7 (E.D. Mich. Dec. 8, 2011) (concluding—in a case in which the second factor favored the petitioner but the other two factors did not—that the petitioner "failed to establish that the substitution of trial counsel was warranted" and "[m]ore importantly, for purposes of federal habeas

review, he has not shown that the state court's ruling on this issue was unreasonable"); *Kelly*, 2015 WL 1396476, at *8; *United States v. Griffin*, 476 F. App'x 592, 597 (6th Cir. 2011) ("[G]iven the timing of the motion in this case and the lack of any evidence of a material conflict between defendant and his court-appointed counsel, we conclude the district court did not abuse its discretion in refusing to delay the trial." (citing *United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010))).

As to the third factor, Petitioner fails to show that "the conflict between the attorney and [himself] was so great that it resulted in a total lack of communication preventing an adequate defense." *Jennings*, 83 F.3d at 149. Petitioner's complaints against counsel involved his disagreement with counsel's advice to plead guilty rather than go to trial. Such a disagreement was not a material conflict. *See Griffin*, 476 F. App'x at 596–97 (finding no "evidence of a material conflict between defendant and his court-appointed counsel" in a case in which the defendant "told the court he was in disagreement with his counsel because his counsel wanted him to enter a plea instead of go to trial"). The conflict between Petitioner and his attorney "stemmed primarily from counsel's failure to paint a rosy picture of defendant's chances for full exoneration at trial."

18

*Id.* at 597. Counsel, however, has "an obligation to advise [his or her client] truthfully. The fact that [Petitioner's] lawyer did not tell him what he wanted to hear about his chances of success does not qualify as the type of serious conflict that results in a total lack of communication preventing an adequate defense." *Id.* To the extent there was a "strained relationship" between Petitioner and his attorney, there was not a "complete breakdown in communication" that prevented Petitioner from receiving an adequate defense. *Vasquez*, 560 F.3d at 468. The record in this case does not demonstrate that the disagreement between Petitioner and his attorney rose to the level of a conflict sufficient to justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

Moreover, there is no clearly established federal law from the Supreme Court requiring an inquiry by the trial judge into the nature of a defendant's dissatisfaction with his or her attorney prior to denying a motion for substitution of counsel. *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a grant of habeas relief because the inquiry requirement was not clearly established federal law); *Peterson v. Smith*, 510 F. App'x 356, 366 (6th Cir. 2013) ("[T]he failure [of the trial court] to

[make a sufficient inquiry] could not be the basis for relief under AEDPA because such inquiry is not required by clearly established Supreme Court precedent." (citing *Brooks v. Lafler*, 454 F. App'x 449, 452 (6th Cir. 2012) (per curiam); *James*, 470 F.3d at 643)). "Of course, that would not preclude petitioner from seeking relief on the grounds that the refusal to appoint new counsel resulted in a denial of effective assistance of counsel at trial." *Peterson*, 510 F. App'x at 366 (citing *Brooks*, 454 F. App'x at 452). But in the absence of a showing that a habeas petitioner received the ineffective assistance of counsel at trial, a state trial judge's failure to inquire into a habeas petitioner's complaints against his or her counsel before denying a motion for substitution of counsel does not entitle the petitioner to habeas relief. *See id.* at 366–67. As set forth below, Petitioner does not establish that he was denied the effective assistance of counsel. He is therefore not entitled to relief based on his challenge to the trial court's inquiry regarding his motion to substitute counsel.

The Michigan Court of Appeals' conclusion as to the trial court's failure to appoint substitute counsel was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner is thus not entitled to federal habeas relief on his first claim. *See Henness*

*v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (finding that the state courts' denial of a claim involving substitution of counsel "was a reasonable application of constitutional law").

## B. Petitioner's Second and Third Claims Regarding Ineffective Assistance of Counsel

Petitioner alleges in his second and third claims that he was denied the effective assistance of trial counsel.

A defendant must prove two things to show that he or she was denied the effective assistance of counsel. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Said differently, the defendant is required to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)). Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, "[t]he

21

defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664). Under the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "a state court must be granted

a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland*'s high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In his second claim, Petitioner alleges that trial counsel was ineffective for failing to impeach "the complaining witness with inconsistent statement[s]." (ECF No. 1, PageID.19.) The Michigan Court of Appeals rejected the claim as follows:

> Defendant . . . argues that defense counsel was ineffective because he failed to impeach HB with various statements that she had made to investigators. "Counsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v. Lane*, 308 Mich. App. 38, 68; 862 N.W.2d 446 (2014).
>
> First, in a July 5, 2017, interview, HB was asked how often the improper touching occurred, and HB responded, "Not too often, but like sometimes." And in a July 10, 2017 interview, HB stated that the sexual assaults took place "once in a while." Defendant argues that counsel should have impeached HB with these statements. At the *Ginther*[2] hearing, defense counsel testified that he did not view these vague statements as all that inconsistent with HB's trial testimony, and he did not wish to be viewed by the jury as attacking HB over less than compelling inconsistencies. Counsel also indicated that

---

[2] *See People v. Ginther*, 390 Mich. 436 (1973).

23

HB's statements to investigators confirmed her claim that defendant had indeed touched her in an inappropriate manner, which could have bolstered her trial testimony. Further, defense counsel was worried that he would be opening the door to other statements made by HB to investigators in which she asserted that defendant had penetrated her vagina with his penis on several occasions. We will discuss the alleged penile-vaginal penetrations in more detail below.

At trial, on cross-examination of HB, defense counsel was able to elicit testimony that of the 30 to 40 times that defendant touched her, only half of those touches were inappropriate. On redirect examination, HB acknowledged that she was only estimating the number of times that defendant touched her in a sexual manner. HB's trial testimony was not very consistent with respect to the number of times that defendant touched her inappropriately. HB clearly struggled, understandably so, in putting a number on the times that defendant sexually assaulted her. The pretrial statements made by HB to investigators, as quoted above, would have added little to nothing to the defense. Importantly, the jury witnessed HB's confusion regarding the number of improper acts, yet plainly it still found her credible. Indeed, we question whether the statements to investigators were truly inconsistent with her trial testimony. The statements were vague, and there is nothing in the record showing anyone sought to clarify what HB exactly meant when she said that the sexual assaults occurred "once in a while," "not too often," and "sometimes." Defense counsel testified at the *Ginther* hearing that he had read and was familiar with all of the HB interviews and that, as mentioned earlier, he had to walk a perilous line between being seen as attacking the youthful victim and defending his

client, which explained in part why he did not elicit testimony on the so-called inconsistent statements. We cannot conclude that counsel's performance was deficient or that defendant was prejudiced by any assumed deficiency.

Next, defendant points to a July 10, 2017, interview in which HB stated that her mother did not know what was going on. Defendant argues that counsel should have impeached HB with this statement, which was inconsistent with her claim at trial that her mother was aware of and had witnessed the sexual abuse. At the *Ginther* hearing, defense counsel testified that he thought that there would be a hearsay problem with respect to what HB's mother said, noting that HB's mother did not testify "because she herself was charged with inappropriate behavior." We conclude that the hearsay argument had no merit, considering that hearsay issues would not have been implicated in regard to testimony by HB concerning whether her mother was present and witnessed the abuse. The few pages of the transcript of the July 10, 2017 interview that are in the record revealed that the statement regarding HB's mother was made in the context of those occasions on which defendant allegedly touched HB and MH while they were together. At trial, HB testified that her mother witnessed half of the assaults committed by defendant against HB. HB did not specifically testify that her mother observed sexual assaults wherein HB and MH were both being abused at the same time. Thus, we have no definitive evidence of an inconsistent statement; therefore, we cannot conclude that counsel's performance was deficient or that defendant was prejudiced by any assumed deficiency. But even if there were an inconsistency, we simply cannot find that this discrepancy, if presented to the jury, would have affected the outcome of the proceeding.

In an August 24, 2017, interview, which was the last of several interviews with HB, she indicated that there were five to seven times that defendant had placed his penis inside her vagina. Defendant argues that counsel should have impeached HB with this statement, which was inconsistent with her claim at trial that defendant had only touched her with his hands. At the *Ginther* hearing, defense counsel testified that he did not wish to elicit testimony about the claims HB made in her final interview of penile-vaginal penetration. Although the statements were inconsistent with her trial testimony, counsel worried in part that the jury would be inflamed if it heard that defendant had actually had sexual intercourse with HB.

At the *Ginther* hearing, defense counsel was questioned by appellate counsel, the prosecutor, and the trial court. And the subject of HB's statements made during her final interview was extensively discussed, with the prosecutor injecting some of his own thoughts on the history of the case while formulating questions for defense counsel. The record of the *Ginther* hearing indicated that the prosecutor made his charging decisions before HB's final interview and that he chose not to pursue a charge of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, even after he learned about HB's claims of penile-vaginal penetration. Defense counsel agreed with the prosecutor at the *Ginther* hearing that the prosecutor's charging decisions were conservative and generous to defendant. Defense counsel revealed that in chambers in the district court there was some discussion about the possibility that defendant could be charged with CSC-I. Defense counsel testified that fear of the prosecution amending the charges to add a CSC-I charge played a role in

his decision not to dig into HB's statements regarding penile-vaginal penetration.

"An information may be amended at any time before, during, or after trial to cure any defect, imperfection, or omission in form or substance, including a variance between the information and the proofs, as long as the accused is not prejudiced by the amendment and the amendment does not charge a new crime." *People v. Higuera*, 244 Mich. App. 429, 444; 625 N.W.2d 444 (2001), citing MCL 767.76. We seriously question whether the prosecutor could have amended the information at trial to add a CSC-I charge had defense counsel chosen to try and impeach HB on cross-examination with her statements claiming that sexual intercourse had occurred. Nevertheless, we cannot conclude that defense counsel's performance fell below an objective standard of reasonableness or that defendant was prejudiced by any presumed deficient performance. Although the investigatory statements were inconsistent with HB's trial testimony, and while we fully appreciate that the case presented a credibility contest, we simply do not believe that introducing statements that on five to seven occasions defendant penetrated HB's vagina with his penis would have been viewed by the jury in defendant's favor. A reasonable attorney could logically determine that there would be too much danger going down that road.

Finally, in a July 21, 2017, interview, HB asserted that on one occasion defendant called HB and MH into a bedroom where defendant was having sex with HB's mother. HB stated that, after entering, she and MH then just walked out of the bedroom without any attempt by defendant to stop them from leaving. Defendant argues that counsel should have impeached MH with HB's statements because they were

inconsistent with MH's testimony that defendant forced HB and MH to stay in the bedroom and watch the sex act. Defendant also contends that counsel should have questioned HB about the matter on cross-examination. At the *Ginther* hearing, defense counsel testified that the situation regarding the incident in the bedroom was confusing and that using HB's statements would have had minimal benefit and was not worth the risk of opening the door to prior statements. Counsel was also concerned with how MH and HB would have responded.

Defendant fails to provide us with any analysis of the rules of evidence that would have allowed defense counsel to inquire of MH about a pretrial statement made by HB; consequently, we reject that aspect of his argument. See *People v. Hicks*, 259 Mich. App. 518, 532; 675 N.W.2d 599 (2003) ("A party may not announce a position on appeal and leave it to this Court to unravel or elaborate his claims."). With respect to questioning HB, defense counsel would have had to first ask HB about the incident before calling attention to her statements made during the interview, assuming that HB's trial testimony would have differed from her earlier statements. The incident was relevant to the gross indecency charge. And even though HB stated in her interview that defendant did not force the girls to remain in the bedroom, she did claim that defendant called the girls into the room while he was having sex with HB's mother so that they would witness the sex. Therefore, we fail to see how bringing HB's pretrial statements to the jury's attention would have been beneficial or favorable to defendant. Prejudice has not been shown, assuming deficient performance.

*Durbin*, 2019 WL 6048640, at *4–6 (footnotes omitted).

28

Petitioner does not show that the Michigan Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law. Many of the inconsistencies between the prior statements to investigators and the trial testimony involved minor details. Petitioner does not show that counsel's decision to not challenge witnesses over minor inconsistencies constituted deficient performance and prejudiced Petitioner under *Strickland*. *See Campbell v. United States*, 364 F.3d 727, 735 (6th Cir. 2004) ("affirm[ing] the district court's denial of relief" on an ineffective assistance of counsel claim because not impeaching a witness based on minor inconsistencies "was a reasonable trial strategy" and the defendant was "unable to establish that he was prejudiced by counsel's failure to question [the witness] about these minor inconsistencies"); *see Wolfe v. Bock,* 412 F. Supp. 2d 657, 676–77 (E.D. Mich. 2006). Nor does Petitioner show that the Michigan Court of Appeals unreasonably applied the *Strickland* standard. "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (internal citation omitted).

Moreover, "[c]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Id.* (internal citation omitted). Questioning HB about her prior statements to the investigators that Petitioner engaged in penile-vaginal intercourse with her would have been extremely damaging to Petitioner. Petitioner does not show that counsel was ineffective for failing to use those prior statements to impeach HB's trial testimony. In addition, counsel was concerned that the jury would be offended by an overly aggressive cross-examination of a sympathetic witness. Petitioner does not overcome the presumption that counsel's approach could be a valid trial strategy under the circumstances that defeats an ineffective assistance of counsel claim. *See Muntaser v. Bradshaw*, 429 F. App'x 515, 522 (6th Cir. 2011) (concluding that a petitioner was not entitled to habeas relief on the basis that trial counsel "was constitutionally deficient by failing to cross-examine" a witness because the petitioner did not "overcome the presumption that counsel's decision to avoid badgering a sympathetic witness 'might be considered sound trial strategy' under the circumstances" (quoting *Strickland*, 466 U.S. at 689)); *Dell*, 194 F. Supp. 2d at 649 ("[The] petitioner must

30

overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy." (citing *Strickland*, 466 U.S. at 689)). As a result, Petitioner is not entitled to relief on his second claim.

In his third claim, Petitioner alleges that trial counsel was ineffective for failing to undertake a sufficient pretrial investigation. The Michigan Court of Appeals rejected the claim:

> We . . . address defendant's contention in his Standard 4 brief[3] that counsel was ineffective by failing to contact and interview a number of witnesses, including HB's mother and defendant's grandmother, who had also resided in the trailer, and by failing to produce these witnesses at trial. Although defendant claims that these witnesses could have testified favorably for the defense, he failed to seek testimony from these individuals at the *Ginther* hearing. Neither did he obtain any affidavits from these claimed witnesses. Because we can only speculate regarding the nature or substance of their testimony, assuming that they would, it is impossible to assess this claim of ineffective assistance of counsel as to whether counsel's performance was deficient and whether prejudice was incurred. Defendant has effectively failed to meet his burden of establishing the factual predicate for his claim. Reversal is unwarranted.

*Durbin*, 2019 WL 6048640, at *4.

---

[3] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594 n.6 (E.D. Mich. 2008).

Petitioner does not show that his third claim entitles him to habeas relief. Petitioner did not provide the state courts or this Court with affidavits from the individuals at issue concerning their proposed testimony and willingness to testify on Petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (denying an ineffective assistance of counsel claim because the petitioner "provide[d] no support for this claim"). By failing to present evidence to the state courts in support of his ineffective assistance of counsel claim, Petitioner is not entitled to an evidentiary hearing on that claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) ("By failing to submit evidence, [the petitioner] barred himself from developing the claim further, and is not now entitled to an evidentiary hearing." (citing 28 U.S.C. § 2254(e)(2)(A)(ii))). Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own allegations as to whether the proposed witnesses would have been able to testify and what the content of their testimony would have been. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's

32

failure to call these individuals as witnesses. He therefore does not show that his attorney was ineffective under *Strickland*. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007) ("Unable to prove prejudice resulting from the failure to call [an individual to testify], [the petitioner] could not prevail on this ineffectiveness claim whatever the deficiency of his attorney in choosing that course of action." (citing *Strickland*, 466 U.S. at 697)).

Moreover, this Court cannot entertain affidavits or testimony from the proposed witnesses. Habeas review "under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Therefore, the Court may not consider any new evidence that Petitioner would want to present at this point in support of his ineffective assistance of trial counsel claim under § 2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590 n.3 (6th Cir. 2012) (declining to consider testimony taken in a federal evidentiary hearing "because it was not part of the state court record"). Thus, Petitioner is not entitled to habeas relief on his third claim.

## IV.   Certificate of Appealability and Leave to Proceed *In Forma Pauperis*

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability]." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In order to obtain a certificate of appealability, a prisoner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, "the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal citation and quotation marks omitted). When a district court rejects a habeas petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254

34

Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see Strayhorn v. Booker*, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Here, the Court denies Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell,* 194 F. Supp. 2d at 659; *Coker v. Stephenson*, 662 F. Supp. 3d 759, 769 (E.D. Mich. 2023). The Court denies Petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous. *See id.*; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## V.    Conclusion

For the reasons set forth above, IT IS ORDERED that Petitioner's application for a writ of habeas corpus (ECF No. 1) is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that Petitioner is DENIED leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: March 31, 2025              s/Judith E. Levy
       Ann Arbor, Michigan        JUDITH E. LEVY

United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2025.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager